IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Marriage of | ) | No. 68455-8-I |
| C. MICHAEL RIDDELL, | ) | |
| | ) | DIVISION ONE |
| Appellant, | ) | |
| | ) | |
| and | ) | UNPUBLISHED OPINION |
| | ) | |
| DEBORAH RHEA RIDDELL, | ) | |
| | ) | |
| Respondent. | ) | FILED: April 29, 2013 |

SCHINDLER, J. — In this dissolution action, Michael Riddell contends the court erred in awarding Deborah Riddell approximately 59 percent of the parties' property and assets. Michael Riddell asserts insufficient evidence supports several of the findings of fact, claims the court improperly considered a number of speculative factors, and challenges the valuation of the pension benefits. We affirm.

FACTS

Michael and Debbie Riddell married in 1995. Michael was 53-years-old and Debbie was 37-years-old,[1] and they had roughly equivalent separate assets. Michael and Debbie were both employed by a Boeing subsidiary with a nepotism policy. Because Michael held an executive position, after the couple married, Debbie left her job at the Boeing subsidiary.

---

[1] For clarity, we refer to both parties by their first names.

Two years later, Michael transferred to a job at Boeing in Seattle. Debbie used the proceeds from the sale of her home toward the purchase of a house in Bellevue. Because Boeing did not have a nepotism policy, Debbie got a job working at Boeing. In order to maximize Michael's pension through the executive matching program, the parties paid most of their living expenses out of Debbie's earnings. In 2002, the parties bought a second home on Hood Canal.

When Michael was 61-years-old, he accepted an early retirement package. The parties sold their Bellevue house and used the proceeds to purchase property and build a house in Arizona.

After Michael retired in 2003, Debbie continued to work at Boeing, earning a salary of over $100,000. Debbie was able to telecommute from Arizona. However, she had to frequently travel to Seattle and abroad, and was often gone two weeks out of every month. In 2005, Michael and Debbie decided that she should leave her job at Boeing so they could spend more time together, enjoy their home in Arizona, and travel.

The parties separated on November 30, 2010, and Michael filed a petition for dissolution. At the time of trial, Michael had been retired for nine years and was 70-years-old. Debbie had been out of the work force for approximately six years and was 54-years-old. Michael received monthly income of approximately $5,650 comprised of Social Security and pension benefits. Michael was also about to commence mandatory IRA[2] withdrawals of approximately $3,000 per month. The parties' primary assets were the houses in Washington and Arizona, pensions, IRA funds, and investments.

Michael sought an award of a greater share of the parties' martial property, and argued that Debbie should not receive any part of his pension or Social Security

---

[2] (Individual retirement account.)

2

income. Michael also argued that Debbie should resume working right away and could earn a salary in excess of $60,000.[3]

Michael presented the testimony of Certified Public Accountant (CPA) Steven Kessler on the value of the pensions. Kessler testified about the value of the parties' pensions and allocation of the separate and community portions of Michael's pensions according to the "time rule" method.

Debbie presented the testimony of CPA Kevin Grambush. Grambush testified about the financial consequences of dividing the property. Based on a 50/50 division of the assets, Grambush concluded that Debbie would likely deplete her resources several years before her death. In order to equalize the parties' net worth at the time of death, Grambush testified that Michael should receive 42.4 percent of the parties' assets and Debbie should receive 57.6 percent. Debbie also presented evidence that she would not be able to earn a salary of $60,000, but would more likely earn a salary of $20,000 to $30,000 as an administrative assistant or receptionist.

The court concluded that an unequal distribution of the property was appropriate. The court awarded the parties' Hood Canal home with a net value of $134,000 to Michael and the Arizona home with a value of $385,000 to Debbie. The court awarded Debbie the survivor benefit from Michael's pension and her own smaller pension. The court awarded Michael an IRA account valued at $619,000 and awarded Debbie an IRA account valued at $311,000. The court awarded $400,000 in a community investment account to Debbie and the balance of $105,500 to Michael. The court divided Michael's monthly pension income equally through a qualified domestic relations order. The court found that Debbie "should and will" return to the workforce and is likely to earn between

---

[3] Michael abandoned his claim for maintenance at trial.

3

$25,000 and $30,000. The court awarded approximately 59 percent of the assets to Debbie and 41 percent to Michael.[4] The court entered a "Decree of Legal Separation"[5] and written findings of fact and conclusions of law.

## ANALYSIS

### Findings of Fact

Michael challenges several of the trial court's findings of fact. We review a trial court's findings to determine whether they are supported by substantial evidence in the record. In re Marriage of Wilson, 165 Wn. App. 333, 340, 267 P.3d 485 (2011). We do not weigh the evidence or determine the credibility of witnesses. In re Marriage of Greene, 97 Wn. App. 708, 714, 986 P.2d 144 (1999). To determine whether substantial evidence exists to support a finding of fact, we review the record in the light most favorable to the party in whose favor the finding is entered. In re Marriage of Gillespie, 89 Wn. App. 390, 404, 948 P.2d 1338 (1997).

Michael claims Finding of Fact 2.8(s) is not supported by the evidence. Finding of Fact 2.8(s) states that Debbie's "eventual Social Security benefit will be less than Mr. Riddell's." Michael contends that the overall value of the Social Security benefits Debbie will receive is greater than his. But no expert calculated the total value of Social Security benefits for each party or compared those values, and the court made no finding about the relative total value over time. Nor does the evidence in the record establish what those values might be.

---

[4] Michael does not dispute the ratio of the division of the property. Nonetheless, in his brief, Michael asserts that the total value of property awarded to him was less than one million, approximately $800,000. But his calculation excludes the value of the Boeing pensions awarded to him. He also assigns a value of $512,700 to his IRA. But the agreed value of the IRA was $619,127.

[5] At the end of trial, the parties agreed to a legal separation. The parties agreed that the legal separation should remain in force for at least one year.

4

The evidence established that Debbie currently receives no Social Security income and, when she does so, her monthly Social Security income will be lower than Michael's. The evidence showed that Michael received monthly Social Security of $1,602 and that if Debbie began drawing benefits at age 62 in 2019, she would receive a monthly payment of approximately $1,407. Substantial evidence supports Finding of Fact 2.8(s).

Michael also challenges the court's finding that as a result of the parties' "joint decision" that Debbie should leave her employment in 2005, Debbie "lost her continuity of service at Boeing, which affected her pension." Michael appears to take issue with the choice of the word "continuity" to argue that Debbie did not merely interrupt her Boeing employment in 2005. But the essence of the court's finding is that the parties jointly decided that Debbie should leave Boeing and this decision had an adverse effect on her pension. Substantial evidence supports the finding that the joint decision that Debbie should leave her employment with Boeing had an adverse impact on her pension.

Next, Michael challenges the court's finding that "the proceeds of [Debbie's] pre-marital home were used to purchase the parties' Bellevue home." Michael does not claim insufficient evidence supports this finding. Instead, he argues that the court unfairly credited Debbie for her contribution of separate property to the community, while ignoring the contributions he made. Michael points out that the court ordered equal division of his pension income even though his pensions had a separate property component. But nothing in the record suggests that the court placed any undue weight on Debbie's contribution of separate property in determining a just and equitable

5

allocation of the assets. With respect to Debbie's contribution of separate funds toward the purchase of community property, the findings expressly state that Debbie "did not intend to keep her investment as separate property." Thus, the findings establish that Debbie's separate investment was converted to community property during the marriage.

Michael also challenges the value assigned to his separate property interest in the pensions. The trial court found that (1) the total net present value of Michael's pensions is $486,826 and (2) the value of Michael's separate property interest is $122,509.

As Michael points out, Grambush calculated Michael's separate property interest using the "subtraction method," a method this court expressly disapproved of in In re Marriage of Rockwell, 141 Wn. App. 235, 253-54, 170 P.3d 572 (2007). However, Michael acknowledges that the trial court did not use the subtraction method. Michael concedes "[t]he trial court utilized the time apportionment analysis used by Mr. Kessler." Nonetheless, Michael contends the value the court assigned to his separate property interest in his Boeing pension, $122,509, is "not within the field of values testified by the experts."

The court must consider the value of each asset in order to make an equitable distribution of the marital estate. Wash. State Bar Ass'n, Family Law Deskbook § 31.2, at 31-3 (2d ed. 2000 & Supp. 2012). We will not substitute our judgment for the trial court on a factual dispute over the valuation of property. Worthington v. Worthington, 73 Wn.2d 759, 762, 440 P.2d 478 (1968). A trial court does not abuse its discretion by

assigning values to property within the scope of evidence. In re Marriage of Soriano, 31 Wn. App. 432, 435, 643 P.2d 450 (1982).

The court valued the separate property component of Michael's pensions within the scope of the evidence. Kessler testified the value was $206,000, and Grambush assigned a value of $72,500.[6]

Admission of Expert Testimony

Michael argues that the trial court erred by allowing Grambush to testify regarding the probable financial consequences of different percentage allocations of property and assets. Michael contends the projections were based on several underlying speculative assumptions, including the parties' life expectancies, rates of yield on investments, inflation, and estimates of when Debbie will begin working, how much she will earn, and at what age she will begin to draw Social Security.

The trial court has broad discretion in ruling on the admissibility of expert testimony. Philippides v. Bernard, 151 Wn.2d 376, 393, 88 P.3d 939 (2004). If the basis for admission of the evidence is " 'fairly debatable,' " we will not disturb the trial court's ruling. Group Health Coop. of Puget Sound, Inc. v. Dep't of Revenue, 106 Wn.2d 391, 398, 722 P.2d 787 (1986) (quoting Walker v. Bangs, 92 Wn.2d 854, 858, 601 P.2d 1279 (1979)). Washington appellate courts generally do not weigh expert testimony. See In re Marriage of Sedlock, 69 Wn. App. 484, 491, 849 P.2d 1243 (1993).

---

[6] It appears that the trial court resolved some factual disputes in Debbie's favor, such as Michael's hire date and the number of pensions that had a separate property component.

The trial court did not abuse its discretion in considering the financial projections. Michael's challenges to the accuracy and reliability of Grambush's projections go to the weight of the evidence, not its admissibility. Grambush testified about the methodology he used to predict financial consequences. Grambush explained that because the model was based upon certain probabilities and averages, the resulting projections of future net worth and cash flow would not be "exact," but would provide a close approximation "of what to expect." Grambush testified about the assumptions underlying his projections, and explained the basis for values assigned for various costs and expenses.

Division of Property

Michael contends the trial court abused its discretion by distributing the assets unequally in favor of Debbie.

In a dissolution action, all property, community and separate, is before the court for distribution. In re Marriage of Stachofsky, 90 Wn. App. 135, 142, 951 P.2d 346 (1998). While the distribution of property must be just and equitable in consideration of the circumstances, it does not have to be equal. In re Marriage of Washburn, 101 Wn.2d 168, 179, 677 P.2d 152 (1984).

In reaching a "just and equitable" property division, the court must consider four statutory factors: (1) the nature and extent of the community property, (2) the nature and extent of the separate property, (3) the duration of the marriage, and (4) the economic circumstances of the parties at the time of the property division. RCW 26.09.080.

The trial court's paramount concern is the economic condition of the parties. In re Marriage of Crosetto, 82 Wn. App. 545, 556, 918 P.2d 954 (1996); In re Marriage of Williams, 84 Wn. App. 263, 270, 927 P.2d 679 (1996). When making an equitable property division, the court is not required to use a precise formula or calculate the distribution with mathematical precision. In re Marriage of Martin, 22 Wn. App. 295, 298, 588 P.2d 1235 (1979); Crosetto, 82 Wn. App. at 556. A manifest abuse of discretion occurs if the decree results in a patent disparity in the parties' economic circumstances. Rockwell, 141 Wn. App. at 243.

We will seldom modify a trial court's division of property and assets on appeal, and the spouse who challenges such a decision bears a heavy burden to show a manifest abuse of discretion on the part of the trial court. This deferential standard of review exists because the trial court is "in the best position to assess the assets and liabilities of the parties" in order to determine what constitutes an equitable outcome. In re Marriage of Brewer, 137 Wn.2d 756, 769, 976 P.2d 102 (1999).

> A court's decision is manifestly unreasonable if it is outside the range of acceptable choices, given the facts and the applicable legal standard; it is based on untenable grounds if the factual findings are unsupported by the record; it is based on untenable reasons if it is based on an incorrect standard or the facts do not meet the requirements of the correct standard.

In re Marriage of Littlefield, 133 Wn.2d 39, 47, 940 P.2d 1362 (1997).

Relying on Rockwell, Michael argues that the disproportionate award of property and assets to Debbie results in a patent disparity. He claims that an unequal division is justifiable only in the case of a long-term marriage or where it serves to benefit a spouse who is older, in poor health, and not employable. See Rockwell, 141 Wn. App. at 243.

9

Here, Michael seeks to characterize Debbie as the "advantaged" spouse, because she is younger, in good health, and has present earning capacity.

In Rockwell, this court affirmed a 60/40 division of property. Rockwell, 141 Wn. App. at 241. Although the wife's physical condition and age were factors supporting the unequal division of property, Rockwell does not stand for the proposition that any particular circumstances are required, or that the trial court must characterize the marriage as "long term," in order to make a division of property which deviates from a 50/50 split. See Rockwell, 141 Wn. App. at 243.

There is no formula the trial court must apply when dividing property upon dissolution. The key to an equitable distribution of property is fairness. In re Marriage of Tower, 55 Wn. App. 697, 700, 780 P.2d 863 (1989). "Fairness is attained by considering all circumstances of the marriage and by exercising discretion, not by utilizing inflexible rules." Tower, 55 Wn. App. at 700.

Michael also suggests that the trial court improperly considered the parties' receipt of Social Security benefits in determining the equitable allocation of assets. In its oral ruling, the trial court noted that it took into account the fact that Debbie would not receive Social Security benefits for some time and that once she receives benefits, her benefit amount will be "significantly less" than Michael's. The court cannot, and here, did not, award Social Security benefits as part of its property distribution. See In re Marriage of Zahm, 138 Wn.2d 213, 219, 978 P.2d 498 (1999). However, the present and future receipt of Social Security benefits by the parties is a factor the court is entitled to consider. Rockwell, 141 Wn. App. at 244-45.

The court did not abuse its discretion in awarding Debbie approximately 59 percent of the property and assets. Substantial evidence supports the court's division of property to provide each party with sufficient resources to meet their future needs.

Attorney Fees on Appeal

Debbie has submitted an affidavit of financial need in support of her request for attorney fees on appeal under RCW 26.09.140. Michael filed a declaration in response. We grant Debbie's request for attorney fees on appeal upon compliance with RAP 18.1.

We affirm.

WE CONCUR: