# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Matter of the Marriage of )
) No. 68933-9-I
MICHELLE HUGHES, )
) DIVISION ONE
          Respondent, )
) UNPUBLISHED OPINION
     and )
)
ROBERT HUGHES, )
)
         Appellant. ) FILED: November 4, 2013
)

APPELWICK, J. — Robert appeals the property distribution, as well as the amount

and duration of spousal maintenance awarded to Michelle in the dissolution of their 25

year marriage. We affirm.

## FACTS

Robert Hughes and Michelle Hughes (now Michelle Evans)[1] married on June 15,

1985.[2] They have three adult daughters. They separated after 25 years together.

Throughout most of his life and during the parties' marriage, Robert has worked

for Hughes Farms, Inc.—the Hughes family farm. Hughes Farms operates 4,000 acres

and its primary crop is potatoes. Farm ownership is heading into its fifth generation,

and the current principals are Robert, his mother, his three brothers, and his nephew.

Robert holds 8,209 of the 50,000 outstanding shares in Hughes Farms. He acquired all

---

[1] We refer to the parties as Robert and Michelle to avoid any confusion.

[2] Robert challenges only five of the trial court's findings of fact on appeal: 2.9 (including Robert's separate property in property division; separate property intended to provide retirement income), 2.10 (separate property distribution), 2.29 (amount and duration of maintenance; Michelle's employability), 11 (amount and duration of maintenance), and 20 (equalizing award for property division). The remaining unchallenged findings are verities on appeal. Jensen v. Lake Jane Estates, 165 Wn. App. 100, 105, 267 P.3d 435 (2011).

of these shares through gifts from his parents both before and during his marriage to Michelle. Robert does an "array of things" for the farm. For instance, he cleans ditches, plows, performs electrical and mechanical work, and fills in for employees.

Michelle, a high school graduate, worked as a dental assistant early in the parties' marriage. She stopped working shortly before their oldest daughter was born in October 1986. Though she did not return to work as a dental assistant, Michelle operated an at-home daycare for about five years when their daughters were young. Throughout the marriage, Michelle also worked for Hughes Farms periodically. She handled licensing, farm-safety programs, labor and industry claims, and eventually took over plant audits, among other tasks. Michelle quit working for the farm after filing for dissolution. Shortly before trial, Michelle started a seasonal, part-time job as a farmer's market stand manager, which pays $17.50 an hour.

During marriage, Robert, Michelle, and their three daughters enjoyed a high standard of living. For instance, every year they spent approximately $40,000 on travel, $20,000 on clothes, and $100,000 on horses and horse shows for the girls. The parties spent Robert's entire income every year and saved no cash for retirement. Instead they purchased farm land and quickly paid off mortgages, intending for rental income from that land to provide for their retirement.

Robert and Michelle separated on January 7, 2011, and Michelle petitioned for dissolution less than a month later. Upon separation, the parties agreed that Robert would retain his farm shares, all of the rental farm parcels, and the family home. Robert agreed to pay Michelle an equalizing payment for her share of these assets, but they disagreed on the amount.

2

The parties appeared in Skagit County Superior Court for a three day trial in March 2012. The disputed issues at trial were the amount of the equalizing payment to Michelle, spousal maintenance for Michelle, and the value of Robert's interest in Hughes Farms. Otherwise, the parties identified and agreed on values and division of their other real estate and personal property. Michelle asked the court to award her half of all the parties' assets, both community and separate, including Robert's share of Hughes Farms. She also requested $20,000 per month in maintenance for the rest of her life.

The trial court awarded Robert his entire interest in Hughes Farms, which it valued at $900,000, as his separate property. The court found that Hughes Farms "was maintained as his separate property through the marriage. It was pretty clear from the testimony that those shares and that the entire corporation were intended to be maintained as a family farm from generation to generation in the Hughes family."

The court then divided the remaining assets, both community and separate, consistent with the parties agreement. The court found that all the real property was community property, except for Mann Road and Maupin Road, which it found to be Robert's separate property. The court included these two properties with the community property for purposes of division. "The court considered the statutory factors under [R]CW 26.09.080 in making a just and equitable division of the marital estate including the two previously defined separate property parcels of the husband as described above (Mann and Maupin)." It determined that the estate (excluding the Hughes Farm stock) should be allocated 60/40 in Michelle's favor. Because the court

awarded Robert all the real estate as the parties had agreed, it ordered him to pay Michelle $654,490.

To address the parties' disproportionate economic circumstances and because it awarded Robert his entire interest in Hughes Farms, the trial court awarded Michelle spousal maintenance in the amount of $12,000 per month until she reaches age 55, then $10,000 per month until age 66. At 47 years old, Michelle is in good health and capable of working full time. However, her employment situation is much less secure than Robert's, because she is only just reentering the workforce. In awarding maintenance, the court considered the parties' 25 year marriage; their high standard of living during marriage; their relative age, employability, and earning capacity; the "gross disparity" in their monthly incomes; and the fact that the court awarded Robert all the income-producing assets and his interest in Hughes Farms. Even so, the court acknowledged, the maintenance award is "not enough money to equalize the [parties'] income."

Robert appeals, contesting the trial court's property distribution as well as the amount and duration of the spousal maintenance award.

## DISCUSSION

### I.    Property Distribution

Robert argues that the trial court erroneously included Mann and Maupin Roads—his separate property—in calculating the 60/40 asset distribution in Michelle's favor. He asserts that no evidence supports the court's finding that he intended the rental income from those separate properties to provide for their retirement. He further

4

argues that the 60/40 property distribution is unjust, particularly in light of the separate property included in distribution and the long-term maintenance award.

In reaching a "just and equitable" property division, the trial court must consider four statutory factors: (1) the nature and extent of the community property, (2) the nature and extent of the separate property, (3) the duration of the marriage, and (4) the economic circumstances of each spouse at the time the property division is to become effective. RCW 26.09.080; In re Marriage of Rockwell, 141 Wn. App. 235, 242-43, 170 P.3d 572 (2007). All property, both community and separate, is before the court for distribution. In re Marriage of Brewer, 137 Wn.2d 756, 766, 976 P.2d 102 (1999). The trial court has broad discretion in distributing marital property, and its decision will be reversed only if there is a manifest abuse of discretion. Rockwell, 141 Wn. App. at 242. A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons. In re Marriage of Muhammad, 153 Wn.2d 795, 803, 108 P.3d 779 (2005).

On appeal, a trial court's finding of facts will be upheld if supported by substantial evidence. In re Marriage of Bernard, 165 Wn.2d 895, 903, 204 P.3d 907 (2009). Substantial evidence is evidence sufficient to persuade a fair-minded person of the truth of the declared premise. Id. Michelle testified at trial that it was her understanding that land rent income and Robert's shares of Hughes Farms were to provide for their retirement. Robert likewise testified that they intended for their farm rentals to be their retirement. Based on this testimony, substantial evidence supports the trial court's finding that income from the parties' rental properties was intended to provide for their retirement.

5

Even if the parties did not intend for income from Mann and Maupin Roads to be used for their retirement, the trial court had the discretion to include that separate property in its calculation of the division of the value of the estate. In exercising that discretion, the trial court articulated several other compelling reasons for including Robert's separate property in the equalizing payment to Michelle. For instance, the court awarded Robert all of his separate interest in Hughes Farms, valued at $900,000, excluding it entirely from distribution. The court also found that Robert was "in a uniquely powerful position with respect to controlling his own destiny vis-à-vis the finances." He has great control over his income, because he negotiates the amount he receives from Hughes Farms for renting his property. In addition, "the farm probably paid more than fair market value in rent for the real estate to Mr. Hughes." Robert and Michelle also agreed that he would be awarded all of the income-producing real estate. Whereas Robert is already situated to earn a return on those properties, Michelle will have to invest her cash award to earn any return. And, Robert's average gross monthly salary is $30,747, while Michelle's is only about $1,723.

After awarding Robert his interest in Hughes Farms "off the top," the court divided the remaining community and separate property 60/40 in Michelle's favor and awarded her maintenance to offset the parties' significant economic disparity. It was within the trial court's discretion to have done so even including the interest in Hughes Farms. See Rockwell, 141 Wn. App. at 255 (affirming a 60/40 division of overall estate as fair and equitable). Michelle was not awarded even half of the combined estate, though the trial court had the discretion to do so. See In re Marriage of Irwin, 64 Wn. App. 38, 49, 822 P.2d 797 (1992) ("[I]t was within the trial court's discretion to determine

6

that the fairest distribution was an approximately equal division of all property, whether separate or community."). Robert still walked away with a majority of the marital estate. The trial court made carefully reasoned findings and did not abuse its discretion in distributing the parties' property.

## II. Double Dip

Robert argues that the trial court impermissibly double dipped in awarding maintenance, because it considered his farm shares and his income from the farm shares to justify maintenance, when the only real value in the farm shares is the income they produce.

Robert relies on In re Marriage of Barnett, which gave rise to the "double dip" line of cases. 63 Wn. App. 385, 818 P.2d 1382 (1991). The Barnetts divorced after 44 years of marriage. Id. at 386. Their major asset was their salvage business, valued at $200,000. Id. The trial court awarded Mrs. Barnett a $100,000 lien against the business. Id. The court also awarded her $500 per month maintenance for the rest of her life. Id. at 386. The appellate court found that the maintenance award was essentially a distribution of assets, because Mr. Barnett was selling off existing scrap and not acquiring more. Id. at 388. The proceeds of the business were not from business operation but from business liquidation. See id. at 386, 388. But, the distribution had already been effected by the $100,000 lien to Mrs. Barnett for one half the value of the salvage business. Id. at 388. Therefore, the trial court impermissibly distributed the same property twice through the lien and the maintenance award. Id.

However, the Barnett court recognized that if the parties' assets are insufficient to permit compensation through property division, a supplemental award of maintenance is

appropriate. Id. The trial court may properly consider the property division in awarding maintenance, and consider maintenance in making an equitable division of the property. In re Marriage of Estes, 84 Wn. App. 586, 593, 929 P.2d 500 (1997).

The court awarded Robert his entire interest in Hughes Farms as his separate property. Michelle received no share of the corporation. The trial court then properly considered the income produced by this asset along with the other assets in awarding spousal maintenance.[3] The court compared Robert's farm shares income with Michelle's income, and awarded Michelle close to half of Robert's monthly farm shares income to cure the disparity. This was not a double-dip as Robert alleges. Robert's income from the Hughes Farms shares was used, not the value of the shares themselves. There is nothing comparable to a liquidation of assets as in Barnett. Spousal maintenance based on Robert's income, including income from the farm shares, is supported by case law and squarely within the trial court's discretion.

III.   Spousal Maintenance

Robert argues that the trial court abused its discretion in the amount and duration of spousal maintenance it awarded Michelle—$12,000 per month until she reaches age 55, then $10,000 per month until age 66. He raises three objections to this award.

Robert first argues that under In re Marriage of Washburn, 101 Wn.2d 168, 677 P.2d 152 (1984), Michelle is not entitled to maintenance, because she has already been compensated for her contributions to his superior earning capacity by enjoying a high standard of living during their marriage. Second, he contends that the trial court

---

[3] The trial court excluded Robert's rental property income in calculating his average annual income, because it was already accounted for in the property division.

8

incorrectly awarded maintenance based solely on the length of the parties' marriage, rather than considering their relative postdissolution economic positions. Lastly, Robert asserts that long-term maintenance should be awarded only in extraordinary circumstances, like the spouse seeking maintenance is ill and unable to work. In contrast, Michelle is healthy and capable of employment.

A maintenance award is within the trial court's discretion. In re Marriage of Crosetto, 82 Wn. App. 545, 558, 918 P.2d 954 (1996). Maintenance that is not based upon a fair consideration of the statutory factors constitutes an abuse of discretion. Id. The nonexclusive list of statutory factors includes: the parties' postdissolution financial resources; the time needed for the party seeking maintenance to become self-sufficient; the duration of marriage; the standard of living during marriage; the parties' age, health, and financial obligations; and the ability of one spouse to pay maintenance to the other. RCW 26.09.090. The only limitation on amount and duration of maintenance under RCW 26.09.090 is that, in light of the relevant factors, the award must be just. Washburn, 101 Wn.2d at 178.

Washburn addressed the situation where one spouse supports the other through professional school, but the marriage is dissolved before any financial benefit from that investment is realized. Id. at 170. The parties often have little or no assets to divide, so maintenance is appropriate to compensate the supporting spouse. Id. at 173, 179. The Washburn court noted that maintenance may be unnecessary where the marriage endures for some time after the student spouse finishes school. Id. at 181. The supporting spouse may have already enjoyed a high standard of living for many years, because of the student spouse's increased earning capacity. Id.

9

However, <u>Washburn</u> does not hold that when one spouse enjoys the other's high earning capacity for several years, maintenance is unwarranted. Rather, <u>Washburn</u> recognized that there is no precise formula for awarding maintenance. <u>Id.</u> at 179. "[M]aintenance is not just a means of providing bare necessities, but rather a flexible tool by which the parties' standard of living may be equalized for an appropriate period of time." <u>Id.</u> The parties' postdissolution financial resources—not compensation for contributions to earning capacity—are the "paramount concern" in awarding maintenance. <u>Id.</u> at 181.

Here, the trial court found that Robert's average monthly gross wage was $30,747 over four years, while Michelle's was only $1,723. The trial court also found that Robert was awarded his entire $900,000 separate property interest in Hughes Farms "off the top." One of the primary purposes of maintenance, therefore, was to partially equalize the parties' postdissolution finances. The court explained that it was awarding maintenance, because of the parties' "disproportionate economic circumstances" and the "gross disparity in the parties' resources regardless of the trial court property distribution in favor of wife." Such considerations are proper under <u>Washburn</u>.

In addition to Robert's and Michelle's disparate finances, the trial court took into account their ages and employability, Robert's ability to pay, their high standard of living during marriage, and the duration of their marriage—all relevant factors under RCW 26.09.090. In finding of fact 2.23, the court recognized that Robert's employment and high income is essentially guaranteed for the rest of his work life. In contrast, Michelle's employment situation is much less secure, because she is just beginning a career at

age 47. In considering the duration of the marriage, we have previously recognized that with "a long term marriage of 25 years or more, the trial court's objective is to place the parties in roughly equal financial positions for the rest of their lives." Rockwell, 141 Wn. App. at 243. The trial court did not treat the length of the marriage, or any one factor under RCW 26.09.090, as a trump card in awarding maintenance. And, ultimately, the maintenance award was "not enough money to equalize the [parties'] income."

Robert is correct that long-term maintenance awards have been upheld when one spouse is ill and unable to work. See, e.g., In re Marriage of Bulicek, 59 Wn. App. 630, 634, 800 P.2d 394 (1990) (wife was in ill health with limited job skills); In re Marriage of Morrow, 53 Wn. App. 579, 581, 770 P.2d 197 (1989) (wife had recurring blindness, limiting her ability to work full-time); In re Marriage of Hadley, 88 Wn.2d 649, 651, 565 P.2d 790 (1977) (wife was completely disabled from multiple sclerosis); see also In re Marriage of Tower, 55 Wn. App. 697, 698, 701, 780 P.2d 863 (1989) (similar). However, nowhere do these cases hold that a spouse's inability to work is the sole justification for a long-term maintenance award. Rather, the age, health, and employability of the spouse seeking maintenance is but one factor for the trial court to consider in awarding maintenance. RCW 26.09.090(1)(e); Washburn, 101 Wn.2d at 178-79. Simply because Michelle is capable of working full-time does not vitiate the court's maintenance award.

The overall property division in this case provided Robert with a majority of the separate and community assets, including all of the income-producing assets. In fact, the maintenance award did not equalize the parties' incomes, let alone overcompensate for the property division. We hold that the trial court did not abuse its discretion in the

11

amount and duration of spousal maintenance it awarded Michelle, because it fairly considered the factors of RCW 26.09.090 and made a just award in light of those factors.[4]

We affirm.

WE CONCUR:

---

[4] Robert assigns error to the trial court's award of $2,500 in attorney fees to Michelle. He presents no argument in his opening brief on this assignment of error, so it is waived. RAP 10.3(a)(6); Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). Because Michelle withdrew her request for attorney fees, we decline to award fees to either party.