# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| In the Matter of the Marriage of: | No.  54234-0-II |
| RICHARD JOHN KIRSCHNER, | |
| Appellant, | |
| v. | |
| LAURA ANN DRYBREAD, | UNPUBLISHED OPINION |
| Respondent. | |

LEE, C.J. — Richard J. Kirschner appeals the superior court's order terminating Laura A. Drybread's spousal maintenance obligation to him.  Kirschner argues that the superior court erred by equating his relationship with a live-in girlfriend as the equivalent of remarriage for the purpose of terminating Drybread's spousal maintenance obligation.  Because the spousal maintenance provision in the separation agreement[1] specifies remarriage, and Kirschner is not remarried, the trial court erred by terminating spousal maintenance.  We reverse.

---

[1]  The separation agreement was incorporated into the decree of dissolution.

## FACTS[2]

In December 2007, Kirschner and Drybread obtained a decree of dissolution based on a separation agreement.  The separation agreement required Drybread to pay Kirschner $2,200 per month in spousal maintenance.  The separation agreement's provision on termination of spousal maintenance provided, in relevant part,

> 8.3    Spousal maintenance shall be terminated upon the husband's remarriage or death.  However, spousal maintenance may be reviewed and modified if the wife becomes disabled.  "Disabled" shall be defined as that condition required by the U.S. government to qualify for social security disability benefits.  Otherwise, the wife's maintenance obligation shall be non-modifiable and shall be a continuing obligation and lien upon her estate.

Clerk's Papers (CP) at 18.

In July 2019, Drybread filed a motion for show cause to terminate spousal maintenance, alleging that Kirschner was remarried.  Drybread declared that she had recently seen a news story in which Kirschner was identified as being married to Karen.[3]  A superior court commissioner set the show cause hearing for July 25, 2019.

In response to Drybread's motion to terminate spousal maintenance, Kirschner declared that he was not legally or spiritually married to Karen.  Kirschner explained that Karen was his girlfriend.  Kirschner suffers from numerous medical issues, including multiple sclerosis, diabetes,

---

[2] Drybread filed a motion to strike Kirschner's reply brief because it contained factual assertions not supported by the record. *Motion to Strike Reply Br. of Appellant*, No. 54234-0-II (August 11, 2020).  A commissioner of this court denied the motion to strike but noted "the objections to the reply brief will be forwarded to the panel of judges who will consider the appeal." *Ruling*, No. 54234-0-II (August 25, 2020).  This opinion is based on facts supported by the record before this court.  Any allegations that are not supported by the record are not considered.

[3] In a declaration, Karen states her name is Karen Kirschner.  Because Karen and Kirschner have the same last name, we refer to Karen by her first name for clarity.  We intend no disrespect.

and possible dementia. Because Kirschner relied on Karen for care, they often told medical providers she was his wife so she would be able to be present at his appointments. Kirschner declared that Drybread was aware of and supportive of his relationship with Karen. Drybread was also aware of the scope of Kirschner's medical issue. Drybread sent Kirschner additional money for medical expenses and even offered to amend the terms of the separation agreement so that she would continue to pay spousal maintenance after Kirschner married Karen. Kirschner declared that he did not know why Drybread was initiating court proceedings to terminate spousal maintenance.

Karen also filed a declaration, stating that she was not married to Kirschner and had no plans to marry Kirschner. She documented the extensive amount of care she provided to Kirschner as his live-in girlfriend. Karen also stated that she changed her name so that doctors would allow her to accompany Kirschner to medical appointments. Karen declared that friends, family, and acquaintances, including Drybread, knew that she and Kirschner were not married.

Drybread filed a responsive declaration, arguing that "[w]hile it may be true [Kirschner] and Karen are not legally married," they held themselves out to be married. CP at 75. She declared that Kirschner wore a wedding ring, and that Kirschner and Karen were "married in every other respect." CP at 75. Drybread stated,

> [Kirschner] and Karen enjoy all the benefits of being married. They should not be able to pick and choose in what circumstances they should be treated as married and in what circumstances they can hide the apparent fact that they don't have a marriage license.

CP at 77. Drybread asked that the superior court grant her motion to terminate spousal maintenance based on the fact that Kirschner was receiving all the benefits of being married, regardless of whether he was legally married.

The superior court commissioner terminated Drybread's obligation to pay spousal maintenance. The commissioner granted a modification under RCW 26.09.170(1) based on a change of circumstances. The commissioner ruled,

> I believe it would be against public policy for the court to not terminate the maintenance in a situation such as this where it appears to the court that Mr. Kirschner is simply doing everything but having a legal ceremony. He is married to [Karen] in every other way, and they hold themselves out as husband and wife. And it would be absolutely inappropriate for me to continue to require Ms. Drybread to support Mr. Kirschner and his significant other of 11 years, who has resided with him, who the children call grandmother, who he wears a wedding ring, and who carries his last name, and who has held herself out to be his wife, and he has referred to her as his wife.

Verbatim Report of Proceedings (VRP) (Aug. 22, 2019) at 12.

Kirschner filed a motion to revise the commissioner's order. Kirschner argued that the commissioner erred by modifying spousal maintenance based on a substantial change of circumstances rather than based on remarriage and by modifying spousal maintenance that was not modifiable under the terms of the separation agreement.

In response to Kirschner's motion to revise, Drybread argued that the spousal maintenance provision was void as against public policy. Drybread also argued that the superior court should affirm the commissioner on the ground that Kirschner is remarried because Kirschner was in a committed intimate relationship with Karen.

The superior court disagreed with the Commissioner's application of RCW 26.09.170(1) and ruled that the court did not have the authority to modify spousal maintenance under the terms

4

of the agreement. But the superior court concluded that Kirschner and Karen's relationship was "essentially a marriage." VRP (Nov. 15, 2019) at 17. The superior court explained,

> [T]his is a marriage. And [counsel] has not made any argument to dispute that Mr. Kirschner and his current quote unquote wife are not holding themselves out as being married. And they've been together in that capacity for a long time. And the sole reason for not getting the legal blessing is to continue to have maintenance come. The Court finds that that's essentially a marriage for the purpose of the operation of this separation contract.

VRP (Nov. 15, 2019) at 17. The superior court denied the motion to revise.

Kirschner appeals the superior court's order denying his motion to revise the commissioner's order terminating spousal maintenance.

## ANALYSIS

A. LEGAL PRINCIPLES

When a superior court decides a motion to revise, we review the superior court's decision, not the commissioner's decision. *In re Marriage of Lyle*, 199 Wn. App. 629, 633, 398 P.3d 1225 (2017). We review interpretation of settlement agreements de novo. *In re Marriage of Weiser*, 14 Wn. App. 2d 884, 912, 475 P.3d 237 (2020).

On revision, the superior court may not take new evidence, but the case "is in all other respects equal to any other matter on the court's docket." *Lyle*, 199 Wn. App. at 632. The superior court reviews the motion de novo. *Id*. "Should the judge disagree with the commissioner's disposition, the judge may issue his or her own independent factual findings and legal conclusions." *Id*. at 632-33.

RCW 26.09.170(1) allows the superior court to modify spousal maintenance "only upon a showing of a substantial change of circumstances." And RCW 26.09.170(2) provides,

> Unless otherwise agreed in writing or expressly provided in the decree the obligation to pay future maintenance is terminated upon the death of either party or the remarriage of the party receiving maintenance or registration of a new domestic partnership of the party receiving maintenance.

However, RCW 26.09.070(7) provides, in relevant part,

> When the separation contract so provides, the decree may expressly preclude or limit modification of any provision for maintenance set forth in the decree.

Superior courts have no authority to modify an agreed, nonmodifiable, spousal maintenance provision that is embodied in a decree of dissolution. *In re Marriage of Hulscher*, 143 Wn. App. 708, 716, 180 P.3d 199 (2008).

B.    TIMELINESS

Kirschner argues that Drybread's motion to terminate her spousal maintenance obligation is time barred because modification of the spousal maintenance provision based on unfairness is time barred. Kirschner also argues that Drybread's claim that spousal maintenance should terminate because of Kirschner's relationship with Karen is time barred because she has known about the relationship for many years. Because the superior court did not modify the terms of the spousal maintenance provision, Kirschner's argument fails. And because Kirschner did not argue that the length of Drybread's knowledge barred her petition to terminate maintenance in the superior court, we do not consider it.

First, the superior court did not grant a modification of the spousal maintenance provision based on the original dissolution decree being unfair. Instead, the superior court concluded that the terms of the provision governing termination of spousal maintenance in the separation agreement were satisfied—Kirschner had remarried. Because the superior court did not modify

the spousal maintenance provision based on the original decree being unfair, Kirschner's argument is misplaced.

Second, Kirschner argues,

> Because [Drybread] clearly had knowledge, and notice, that [Kirschner] and Karen were plausibly living in a [Committed Intimate Relationship (CIR)] far more than three years before her motion to terminate maintenance, her claim to terminate the maintenance provision based on an alleged CIR between [Kirschner] and Karen is time-barred.

Br. of Appellant at 25. Kirschner did not raise this argument before the superior court.

Generally, a party may not raise an issue for the first time on appeal. RAP 2.5(a). And Kirschner does not present any argument why we should consider this argument for the first time on appeal. Therefore, we decline to consider Kirschner's argument that Drybread's petition to terminate spousal maintenance is time-barred based on her knowledge of Kirschner's and Karen's relationship.

C.    TERMINATION OF MAINTENANCE

Kirschner argues that because he and Karen are not legally married, the superior court erred by terminating spousal maintenance. We agree.

RCW 26.04.010(1) defines a marriage as "a civil contract between two persons who have each attained the age of eighteen years, and who are otherwise capable." And chapter 26.04 RCW as a whole governs marriages in Washington.

Here, it is undisputed that Kirschner and Karen have not entered into a civil contract for marriage under RCW 26.04.010. Therefore, Kirschner and Karen are not married under RCW 26.04.010 or chapter 26.04 RCW generally.

Furthermore, in *In re Marriage of Tower*, 55 Wn. App. 697, 703-04, 780 P.2d 863 (1989), *review denied*, 114 Wn.2d 1002 (1990), the court held that the trial court improperly ordered spousal maintenance to terminate upon cohabitation. The court held "that a provision which terminates long-term maintenance because of 'cohabitation', even when construed as tantamount to marriage, must be based upon a subsequent finding of substantial change of circumstance in the recipient's finances." *Id*.

Here, the terms of the settlement agreement require Drybread to pay spousal maintenance until Kirschner dies or remarries. This obligation is not modifiable unless Drybread becomes disabled. The superior court concluded Kirschner's relationship with Karen was "essentially a marriage." VRP (Nov. 15, 2019) at 17. But although Kirschner and Karen's relationship may be "essentially a marriage," it is not a marriage under chapter 26.04 RCW. VRP (Nov. 15, 2019) at 17. Under the terms of the separation agreement and dissolution decree, Drybread's spousal maintenance obligation will not terminate unless or until Kirschner dies or remarries. Kirschner has not remarried. Therefore, the superior court erred by terminating the spousal maintenance obligation based on Kirschner's relationship with Karen being "essentially a marriage" without "legal blessing." VRP (Nov. 15, 2019) at 17.

Kirschner also argues that the superior court erred because Drybread did not seek declaratory relief establishing that Kirschner and Karen were in a CIR and the superior court did not analyze the legal factors to establish a CIR. But this argument is misplaced. Here, the superior court did not find that Kirschner and Karen were in a CIR. Instead, the superior court determined that Kirschner and Karen's relationship was "essentially a marriage" and that was sufficient to terminate Drybread's spousal maintenance obligation. VRP (Nov. 15, 2019) at 17. The legal

8

establishment of a CIR was not the basis for the superior court's decision. Therefore, Kirschner's argument is unpersuasive.

D.      MODIFICATION

Kirschner also argues that the superior court erred by modifying the parties' agreed nonmodifiable separation agreement. Because the superior court did not modify the separation agreement, Kirschner's argument is misplaced.

In its ruling, the superior court expressly recognized that it did not have the authority to modify the spousal maintenance provision. And the superior court specifically stated that it was not going to modify that provision.

The relevant issue is whether the superior court properly concluded that Kirschner's relationship with Karen was a "remarriage" for the purpose of terminating spousal maintenance under the terms of the separation agreement, which is addressed above. Because the superior court did not modify the separation agreement, Kirschner's argument is misplaced.

ATTORNEY FEES ON APPEAL

Kirschner requests attorney fees on appeal under RAP 18.1 and RCW 26.09.140. RAP 18.1(a) provides for an award of attorney fees on appeal "[i]f applicable law grants to a party the right to recover reasonable attorney fees or expenses on review." And RCW 26.09.140 provides, in relevant part,

> The court from time to time after considering the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter and for reasonable attorneys' fees or other professional fees in connection therewith, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or enforcement or modification proceedings after entry of judgment.

No. 54234-0-II

> Upon any appeal, the appellate court may, in its discretion, order a party to pay for the cost to the other party of maintaining the appeal and attorneys' fees in addition to statutory costs.

Under RAP 18.1(c), financial affidavits must be filed no later than 10 days prior to the date set for consideration if the applicable law requires consideration of the parties' financial resources.

Here, the filing deadline for financial affidavits was March 29, 2021. No financial declarations were filed. Therefore, we deny Kirschner's request for attorney fees under RCW 26.09.140.

We reverse the superior court's order terminating Drybread's spousal maintenance obligation.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____, C.J.
Le , C.J.

We concur:

_____
Worswick, J.

_____
Sutton, J.

10