[No. 24754-9-I.   Division One.   December 31, 1990.]

*In the Matter of the Marriage of* BEVERLY SHEFFER, *Appellant, and* ALFRED SHEFFER, *Respondent.*

*Robert C. Kaufman,* for appellant.

*Peter Banks,* for respondent.

BAKER, J.—Beverly Sheffer appeals a decree of dissolution, challenging the trial court's decisions concerning property division and award of attorney's fees.

Beverly and Alfred Sheffer were married for 30 years. A high school graduate, Beverly worked as a secretary after marriage but then quit her job and by agreement with Alfred stayed home and raised the couple's four children. Three children were emancipated at time of trial. One, Jennifer, 21, was in college and dependent on her parents for support. Beverly returned to work part time when Jennifer started kindergarten in 1972 and worked either part time or full time for 8 years. Alfred did not approve of her returning to work. When Beverly had health problems and Jennifer needed school transportation, Beverly quit work. She returned to work in 1986 as an automobile license clerk, earning a net $844 per month. She receives no benefits. Beverly has a variety of health problems and spends over $200 per month on required medications.

Alfred has worked at Boeing for over 30 years, has received regular promotions, and in 1989 earned a net monthly income in excess of $4,900.

The court awarded Beverly 60 percent and Alfred 40 percent of community assets valued at $105,829. Beverly was awarded the family home, with an equity of $66,000. Alfred's award included a $12,000 lien on the home, payable with interest within 3 years. In addition, Alfred was awarded his separate inheritance of $15,000.

The parties disagreed over the value of Alfred's Financial Security Plan at Boeing. At trial, Alfred testified that the value of this asset was $11,853. The Financial Security Plan compensates employees for up to 40 hours of unused sick leave per year and is paid to the employee in case of illness. Social security and taxes are deducted. Beverly testified at trial the value was $12,634 and in her brief argued it should have been $12,243. The trial court deducted 25 percent for taxes and social security deductions from the $12,243 figure and arrived at a value of $9,182.50.

In addition, the court awarded Beverly $1,200 per month in maintenance for 36 months and 50 percent of Alfred's vested retirement.

## I

Beverly contends the trial court should have awarded indefinite maintenance because of the long–term marriage and the postdissolution disparity in economic situations between Alfred and herself.

The award of maintenance is within the discretion of the trial court. *In re Marriage of Nicholson,* 17 Wn. App. 110, 561 P.2d 1116 (1977). A trial court abuses its discretion when it makes a decision based on "untenable grounds or for untenable reasons, considering the purposes of the trial court's discretion." *Coggle v. Snow,* 56 Wn. App. 499, 507, 784 P.2d 554 (1990). RCW 26.09.090 requires that the court reach a just result in awarding maintenance, after considering all relevant factors, including the financial resources of each party and the age, physical and emotional condition,

and financial obligations of the spouse seeking maintenance, the standard of living during the marriage, and the duration of the marriage, as well as the time needed to acquire the education needed by the spouse seeking maintenance in order to obtain appropriate employment.

Traditionally, Washington cases have emphasized that alimony is not a matter of right and that one spouse should not be given a perpetual lien on the other spouse's future income. *See, e.g., Hogberg v. Hogberg,* 64 Wn.2d 617, 619, 393 P.2d 291 (1964).

At the same time, the Washington Supreme Court has noted the importance of the parties' postdissolution economic status. In *Stacy v. Stacy,* 68 Wn.2d 573, 577, 414 P.2d 791 (1966), the trial court awarded the wife custody of three children, ordered child support and awarded her $31,703 of the $42,253 community property. The husband earned $12,000 per year and the wife was never employed outside the family home during the 22–year marriage. The Supreme Court found an abuse of discretion which "fosters an inequity", then doubled the amount of maintenance and reduced by more than one–half a lien awarded to the husband against the family home. The Supreme Court noted:

> The future earning capabilities of the wife, if she has no other means of support, represent one of the important concerns of the courts in divorce cases, and must be considered in comparison to those of her husband. It would be manifestly unjust to leave the wife and children with a low and uncertain standard of living while the husband retains a much higher one.

*Stacy v. Stacy,* 68 Wn.2d at 576.

Similarly, in *DeRuwe v. DeRuwe,* 72 Wn.2d 404, 408, 433 P.2d 209 (1967), the Supreme Court noted:

> [I]t is the economic condition in which the decree will leave the parties that engenders the paramount concern in providing for child support and alimony and in making a property division.

In *DeRuwe,* the community property had grown approximately $800,000 during the 22–year marriage. The trial court awarded custody of the children to the wife and ordered child support of $100 per month for each child.

The wife was also awarded less than $90,000 in property plus $5,000 per year alimony while the husband received over $700,000 in property. Finding this award inequitable, the Supreme Court awarded the wife an additional $100,000 in community property. *DeRuwe v. DeRuwe,* 72 Wn.2d at 409.

Several more recent cases have also emphasized that the economic condition in which a dissolution decree leaves the parties is a paramount concern in determining issues of property division and maintenance. In *In re Marriage of Washburn,* 101 Wn.2d 168, 181, 677 P.2d 152 (1984), the court pointed out that consideration of the duration of the marriage and the standard of living during the marriage as mandated by RCW 26.09.090 makes "it clear that maintenance is not just a means of providing bare necessities, but rather a flexible tool by which the parties' standard of living may be equalized for an appropriate period of time." *Washburn,* 101 Wn.2d at 179.

In *Washburn,* the Supreme Court dealt with two cases, affirming in one case a monetary award to the wife who had worked during her husband's professional education, and reversing and remanding in the second case for the trial court to consider compensation to the wife for her contribution toward the cost of her husband's professional education. *Washburn,* 101 Wn.2d at 183–84.

In *In re Marriage of Morrow,* 53 Wn. App. 579, 770 P.2d 197 (1989), this court upheld an award of lifetime maintenance of $2,200 per month where the husband had converted large amounts of community property for his separate use and the wife was unable to work due to problems with her vision. The court noted the award properly reflected that the wife had forfeited economic opportunities during the 22–year marriage while her husband had capitalized on them. *Morrow,* 53 Wn. App. at 587–88.

In *In re Marriage of Tower,* 55 Wn. App. 697, 780 P.2d 863 (1989), *review denied,* 114 Wn.2d 1002 (1990), this court upheld the amount and permanent duration of an award of maintenance in a 19–year marriage where the wife

had multiple sclerosis that substantially limited her activities and the husband received 63 percent of the property. This court also modified the decree to eliminate the automatic termination of maintenance upon cohabitation. The maintenance started at $100 per month and increased to $350 upon emancipation of one child and to $700 upon emancipation of the second child. *Tower,* 55 Wn. App. at 699. The court noted that the disproportionate division of property in favor of the only spouse with any significant earning capacity would be an abuse of discretion if it were not balanced by long–term maintenance. *Tower,* 55 Wn. App. at 701. *See In re Marriage of Bulicek,* 59 Wn. App. 630, 800 P.2d 394 (1990).

On appeal, Beverly has a difficult burden—to demonstrate that the trial court awarded maintenance based on untenable grounds or for untenable reasons considering the purposes of the trial court's discretion. Broad discretion is given the trial court. However, where, as here, the disparity in earning power and potential is great, this court must closely examine the maintenance award to see whether it is equitable in light of the postdissolution economic situations of the parties.

Assuming her continued employment, Beverly will have a monthly income of $2,044 for 3 years. Her monthly house payment is $159 and the underlying mortgage will be satisfied in 1992. Alfred's $12,000 lien is due August 24, 1992. In addition, interest is due at a rate of 12 percent per year ($1,440). Thus, at the end of 3 years, Beverly will owe Alfred $16,320. In all likelihood, Beverly will have to sell or refinance the house in 1992 to pay off this amount. At the same time, her maintenance will expire and she will be reduced to a monthly income of $844 at a time when her housing costs will increase considerably.

Alfred at the time of the decree will be paying $1,200 in maintenance, as well as the college expenses of his daughter, which at time of trial were $450 per month. She is

expected to finish school in December 1993.[1] Deducting these obligations from Alfred's monthly income of $4,900, he will receive a monthly net income of $3,250, which is $1,200 more than Beverly's monthly income. Then, at the end of 3 years, with the termination of maintenance, Beverly would again receive $844 per month and Alfred would receive over $4,000 per month.

The economic reality is that this community has substantially benefited from Alfred's career, which in turn was facilitated by Beverly's caring for the home and family while forfeiting her own economic opportunities. When Beverly did return to full-time/part-time work as her youngest child reached school age, Alfred disapproved. Beverly later left her job for health reasons and to provide transportation for their daughter. Through her efforts, Beverly provided the services needed by the community to function as a family. She did so at a sacrifice of her economic opportunities in the marketplace. That trade-off, clearly agreed to by Alfred, now leaves Beverly economically disadvantaged as compared to Alfred. The *Washburn* court used maintenance as a flexible tool to equalize the parties' standard of living for an appropriate time where the wife supported the husband while he earned a professional degree. *In re Marriage of Washburn,* 101 Wn.2d at 179. Similarly, maintenance should be utilized in this case as a flexible tool to more nearly equalize the postdissolution standard of living of the parties, where the marriage is long term and the superior earning capacity of one spouse is one of the few assets of the community.

The standard of living of the parties during marriage and the parties' postdissolution economic condition are paramount concerns when considering maintenance and property awards in dissolution actions. The record does not convince us that the trial court adequately considered these

---

[1]The record also indicates a completion date of December 1990. Our analysis is not affected by this confusion in dates.

primary factors. We therefore reverse and remand this case for revision of the maintenance award by the trial court.[2]

## II

■ Beverly contends that the trial court abused its discretion by awarding Alfred his $15,000 inheritance and in subtracting 25 percent from Alfred's Financial Security Plan for taxes. The trial court has broad discretion in the division of property in a dissolution and we test that division under an abuse of discretion standard. *In re Marriage of Nicholson,* 17 Wn. App. 110, 118–19, 561 P.2d 1116 (1977).

RCW 26.09.080 requires a just and equitable division of property after consideration of relevant factors including

(1) The nature and extent of the community property; .
(2) The nature and extent of the separate property;
(3) The duration of the marriage; and
(4) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to a spouse having custody of any children.

Former RCW 26.09.080.

■ Here, the trial court considered Alfred's separate property and awarded it to him. Beverly cites no cases in support of her argument that the trial court must add that separate property into the community property total before awarding a percentage thereof to each spouse. The trial court did not abuse its discretion in considering the separate property.

As to the 25 percent deducted for taxes and social security from the Financial Security Plan funds, there was testimony by Alfred that such taxes would be deducted, although not specifically 25 percent. We find that the trial court's decision was within its discretion.

---

[2]We do not mandate a maintenance award of a specific amount or duration. We commend to the trial court's just discretion, however, consideration of an award tailored to the commencement of receipt of retirement benefits. *See Bulicek,* 59 Wn. App. at 633–36.

## III

Beverly contends that the trial court abused its discretion by awarding her only $2,500 of her attorney's fees, which totaled approximately $3,950.

■ In awarding attorney's fees, the trial court considers need and ability to pay. A spouse is not entitled to attorney's fees as a matter of right. *Valley v. Selfridge,* 30 Wn. App. 908, 639 P.2d 225 (1982).

Here, the trial court had all the financial facts before it. Beverly is correct in pointing out the wide disparity between Beverly and Alfred's incomes. However, we cannot conclude that the trial court abused its discretion in awarding attorney's fees and we affirm the award.

Both Beverly and Alfred seek attorney's fees in this appeal. RCW 26.09.140 provides for an award of reasonable attorney's fees for maintaining or defending an action under RCW 26.09. Because of the disparity in income between Alfred and Beverly, we award reasonable attorney's fees to Beverly. *See* RAP 18.1.

### Conclusion

The decree of dissolution is reversed and remanded for entry of a revised decree concerning maintenance, and is affirmed in all other respects.

COLEMAN, C.J., and GROSSE, J., concur.