
# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In re Marriage of              )     NO. 69698-0-I
                               )
    GURMIT SINGH,              )     DIVISION ONE
                               )
              Appellant,  )
    and                        )     UNPUBLISHED OPINION
                               )
    SATVIR KAUR,               )     FILED:  December 16, 2013
                               )
             Respondent. )
_____)

LAU, J. — Gurmit Singh appeals from a decree of dissolution, alleging the trial court abused its discretion in awarding his former wife Satvir Kaur lifetime maintenance of $1,000 per month.[1]  Finding no error, we affirm the lifetime maintenance award and the decree of dissolution.  We remand to the trial court to determine Kaur's entitlement to and the amount of reasonable attorney fees and costs on appeal under RAP 18.1(i).

## FACTS[2]

In January 1990, Gurmit Singh and Satvir Kaur married through an arranged marriage in India.  In 1993, Singh moved to the United States, leaving Kaur in India to

---

[1] Singh does not challenge the maintenance amount, only its lifetime duration.

[2] Singh does not challenge the majority of the trial court's findings of fact.  The facts here are derived from the court's unchallenged findings and the trial testimony and exhibits.

care for their baby daughter Inderpal and Singh's parents and grandparents. In 2002, Kaur and Inderpal joined Singh in the United States.

Kaur completed the 10th grade, and her work skills and English language ability are very limited. Her only work experience consists of sporadic, menial day labor jobs. Federal income tax records show she earned an average of approximately $5,025 per year from 2005 to 2010. Her earnings were directly deposited into Singh's account.

Throughout the marriage, Singh isolated and physically and emotionally abused Kaur to prevent her from acquiring necessary skills and assimilating into American culture. Kaur did the housework and cooking. Singh worked as a taxi driver.

In 2008, after 18 years of marriage, Singh and Kaur separated when Singh forced Kaur and Inderpal from the family's home with no belongings.[3] Inderpal attended school and worked to support her mother.[4] At the time of trial, Kaur reported monthly expenses of $1,117.

In July 2011, Singh petitioned for dissolution. The petition alleged, "The parties have already divided all personal property agreeably. The parties have no real property. Each party should be granted the property currently in their possession." Ex. 133 at 2. Singh reported total monthly gross income as a taxi driver of $2,881.92 and monthly net income of $242.81 in his financial declaration.

---

[3] Singh's brother, Paramjeet, testified that he took Kaur and Inderpal into his home when Singh forced them out in 2008. Kaur and Inderpal later moved out of Paramjeet's home into an apartment, but Paramjeet continued to pay for Kaur and Inderpal's expenses for some time.

[4] At the time of trial, Inderpal worked full-time for FedEx and made about $1,273 per month. She supported herself and Kaur. The record shows Kaur had no income after 2011. She performs limited work for the apartment building where she and Inderpal live in exchange for a $100 monthly reduction in rent.

Singh concealed marital assets before petitioning for dissolution. A month earlier, he sold the interest in his taxicab, Yellow Cab 463, for $157,000 without Kaur's knowledge.[5] Discovery revealed that the City of Seattle recently awarded Singh a wheelchair accessible taxicab license that becomes permanent and transferrable in 2015. Singh also purchased a taxi van, Yellow Cab 262, which he modified for wheelchair accessibility. Singh denied selling his interest in Yellow Cab 463 and claimed in his October 13, 2011 declaration, "I don't own a taxi" and "I have not recently sold a taxi." Report of Proceedings (RP) (Oct. 16, 2012) at 71-72.

Kaur obtained an ex parte restraining order to prevent Singh from permanently hiding the $157,000 sale proceeds. To protect these proceeds, the court ordered Singh to deposit $157,000 into the trust account of Kaur's attorney. Singh failed to comply. During an October 31, 2011 hearing, the court again ordered Singh to turn over the proceeds to Kaur's attorney. It also awarded Kaur $1,000 per month in temporary maintenance, $4,500 in attorney fees, and restraints against Singh to ensure Kaur's safety. Singh refused to turn over the proceeds or pay the awards. On January 31, 2012, the court found him in contempt and ordered him confined to jail, finding he was "not credible in his testimony that he does not have the income or financial resources to comply with the orders." RP (Oct. 23, 2012) at 213.

The court appointed counsel and released Singh from jail in February 2012. At a February 17 review hearing, the court warned Singh about the risk of more jail time if he failed to account for the sale proceeds. On April 4, the court again found Singh "not

---

[5] Kaur testified at trial that she received no money or assets from Singh, contrary to the statement he made in his petition for dissolution.

credible" based on his "history of changing his story at each hearing." RP (Oct. 23, 2012) at 216. The court warned him again about the risk of more jail time if he failed to pay $1,000 in maintenance by the next hearing on April 25. Singh made that payment but failed to pay past-due maintenance and attorney fees owed to Kaur. The court held two subsequent review hearings after ordering Singh to pay $1,000 before each hearing. When he failed to pay these amounts, the court ordered him to jail.

At trial, representing himself,[6] Singh told conflicting stories about his income and the whereabouts of the taxi sale proceeds. Extensive documentary evidence—including bank deposit records and trip sheets Singh provided to the City of Seattle as a requirement of maintaining his taxi license—indicated he earned an average monthly income of $4,904. In addition, he earned cash tips of $490 each month. He also earned $1,820 per month in passive income by leasing his taxi to a second shift driver. His total monthly income was $7,214. Singh testified, based solely on his own financial declaration, that his monthly expenses were about $3,800 at the time of trial. His income and expense numbers result in monthly net income of approximately $3,400. Singh's income tax statements indicated he consistently underreported his income by tens of thousands of dollars.

City of Seattle Consumer Affairs Unit[7] manager Craig Leisy testified for Kaur. Leisy testified that the Consumer Affairs Unit awarded Singh his wheelchair-accessible taxi license around March 2010. He testified that because the licenses are so valuable,

---

[6] The Office of Public Defense determined Singh's self reported income rendered him ineligible for an attorney at public expense.

[7] The Consumer Affairs Unit regulates the taxi and limousine industries in Seattle and King County.

they are nontransferable for five years from the date they are placed in service. He stated that the value of a wheelchair-accessible taxi license like Singh's was about $250,000. He also testified that Singh's wheelchair-accessible van was worth $30,000.

At the close of evidence, Kaur requested the court to award her 70 percent, or $109,000, of the $157,000 Singh received from the sale of Yellow Cab 463, lifetime maintenance of $1,000 per month, attorney fees and costs, and permanent restraining orders against Singh. This property division would allow Singh to keep the $30,000 taxi van and $250,000 license associated with Yellow Cab 262.

In its oral ruling, the trial court addressed Singh's lack of credibility. It compared the documentary evidence to the witness testimony in order to "make a determination of what testimony is credible." RP (Nov. 13, 2012) at 325. The court found Singh's testimony "suspect":

> During this time, I went through all of the exhibits and ultimately found overall, albeit not as to every particular item, that [Singh's] testimony is suspect. And when I say "suspect," [Singh's] testimony isn't consistent with the other evidence that was presented to the Court, that being documents.
> And an example of that is - - and I think it was actually during cross-examination of [Singh], there was testimony by [Singh] and, in fact, he had sold or leased, I guess, depending on the terminology you want to use, but nonetheless received cash for a cab that he placed $85,000 in the cupboard and that his wife took it.
> However, during cross it became clear when looking at the documents that, in fact, money was taken into Canada. And I don't want to go into where it was distributed once it got there, based on [Kaur's] testimony.
> But nonetheless, during cross Counsel inquired about taking over $100,000 cash into Canada, and [Singh] said, "Oh, no. I didn't do that." And then [Kaur] - - and if I recall correctly, was able to provide copies of cashier's checks or checks, if you will, suggesting that indeed that had taken place.
> What I found interesting there is that [Singh] denied it was cash because it was in check form rather than in dollars, cash. And I found that to be disingenuous, at best. So that's just an example of why this Court had serious questions about some of the testimony that [Singh] provided to the court under oath.

RP (Nov. 13, 2012) at 325-27. The court found Kaur's witnesses, particularly Singh's brother Paramjeet, credible. See RP (Nov. 13, 2012) at 328.

The trial court made detailed written findings supporting its awards of property, maintenance, restraining orders, and attorney fees. As to the property, the court made the following unchallenged findings:

The parties have the following real or personal community property:

1. Proceeds of $157,000 from the sale of [Singh's] one-half share in Yellow Cab # 463, which includes a dual taxicab license for Seattle and King County and a taxicab vehicle, a 1997 Ford Vic.
2. 2009 Toyota Sienna, modified as wheelchair accessible taxivan, VINS STDZK23C895272083.
3. Wheelchair Accessible Taxicab license for Yellow Cab # 262.
4. Personal property.

The court awarded Singh all of the parties' community property, valued at $437,000. The court awarded Kaur a $109,000 judgment against Singh and maintenance of $1,000 per month for the duration of her life. The court made the following mostly unchallenged written findings regarding the maintenance award:[8]

2.12 Maintenance
Maintenance should be ordered because:
The parties were married 18 years before the separation in 2008. They enjoyed a modest standard of living. At 44 years of age, the wife has no financial resources, as the husband forced her and the then minor daughter from the home with no belongings in September 2008. The wife is not able to meet her needs independently. She emigrated from India, where she had a 10th grade education and cared for the daughter, as well as the husband's parents and grandparents. She has very limited English language and work skills. She only worked in menial day labor jobs, after she came to the United States.

---

[8] Singh challenges for substantial evidence only the finding that "Given [Kaur's] limited skills and emotional condition, it is likely that she will [never] be able to acquire sufficient education or training to find appropriate employment." Appellant's Br. at 2. We analyze that finding below for substantial evidence.

> The husband prevent[ed] her from acquiring necessary skills and from assimilating into the culture by isolating and abusing her. She was emotionally and physically traumatized and abused by the husband during the 22-year marriage. She recently had surgery to remove cysts in her head and back. Given her limited skills and emotional condition, it is likely that she will [never] be able to acquire sufficient education or training to find appropriate employment. She is now entirely financially dependent on her 20-year old daughter.
>
> The husband is able to meet his own needs while paying maintenance. At 47 years of age, he is one of the top 10% of taxi drivers in Seattle. He sold his 50% interest in a taxicab and the dual Seattle and King County license, Yellow Cab 463, for $157,000 cash in June 2011 and has not provided a credible explanation for the whereabouts of these funds. In 2010, he was awarded a Dual Wheelchair Accessible license from the City of Seattle, which is $250,000. It becomes permanent and transferrable in 2015.
>
> The husband testified that he earned an average of $4,500 per month driving this taxi van. The average on trip sheets he provided to the City of Seattle showed he averaged $4,904 in July 2012. He earns an additional 10% in tips, or $490. On top of this, he leases the taxi van to a second shift driver for $420 per week, or $1820 per month. His total month income is about $7,214. He claimed monthly expenses averag[ing] $3,800 on three financial statements. He claimed to have credit card debt, but there was no evidence of any payment or any intention of payment on the balance of this debt.
>
> After expenses, he has around $3,400 remaining each month. From this, it is appropriate that he pay $1,000 per month in maintenance to his wife for the duration of her life. This amount is less than 30% of his monthly net income.

(Formatting omitted.) The decree of dissolution provides that the maintenance obligation terminates upon the death of either party or upon Kaur's remarriage.

The court also entered a permanent restraining order against Singh. The court ordered him to pay Kaur's attorney fees and costs based on his ability to pay and her financial need under RCW 26.09.140 and Singh's intransigence:

> Throughout this matter, the husband repeatedly change[d] his theory of the case in order to hide assets and income. Initially, the husband claimed that he did not have a taxicab and did not sell a taxicab license. Months later, he claimed his wife told him to sell the taxicab and took the $85,000 in proceeds. This story changed again at trial. Through discovery, wife proved [Singh] had two taxicabs and licenses. He sold his share in one for $157,000 and was awarded another one valued at $250,000. Husband refused to comply with orders to deposit the $157,000 to wife's attorney's trust account for safekeeping, to pay spousal maintenance and to pay awards of attorney fees. The court found him to be

noncompliant in approximately 17 orders, even incarcerating him twice as sanctions for his improper conduct and his constant changing of this story to escape responsibility for his family.

Singh appeals only the maintenance award's lifetime duration.

## ANALYSIS

Maintenance

Singh contends the trial court abused its discretion in awarding lifetime maintenance to Kaur.

In awarding maintenance, the trial court must consider the following statutory factors: (1) the financial resources of the party seeking maintenance, including separate or community property apportioned to him or her; (2) the time needed to acquire education necessary to obtain employment; (3) the standard of living during the marriage; (4) the duration of the marriage; (5) the age, physical and emotional condition, and financial obligations of the spouse seeking maintenance; and (6) the ability of the spouse from whom maintenance is sought to meet his or her needs and obligations while providing the other spouse with maintenance. In re Marriage of Williams, 84 Wn. App. 263, 267-68, 927 P.2d 679 (1996); RCW 26.09.090. Ultimately, the court's main concern must be the parties' economic situations postdissolution. Williams, 84 Wn. App. at 268. Although lifetime maintenance awards are generally disfavored, In re Marriage of Coyle, 61 Wn. App. 653, 657, 811 P.2d 244 (1991), "the only limitation placed upon the trial court's ability to award maintenance is that the amount and duration, considering all relevant factors, be just." In re Marriage of Washburn, 101 Wn.2d 168, 178, 677 P.2d 152 (1984). "Where the assets of the parties are insufficient

to permit compensation to be effected entirely through property division, a supplemental award of maintenance is appropriate." Washburn, 101 Wn.2d at 178.

The trial court is not required to make specific factual findings on all of the factors. Mansour v. Mansour, 126 Wn. App. 1, 16, 106 P.3d 768 (2004) ("Nothing in RCW 26.09.090 requires the trial court to make specific factual findings on each of the factors listed in RCW 26.09.090(1). The statute merely requires the court to consider the listed factors."). When, as in the present case, the disparity in earning power is great and the property division is unequal, reviewing courts must closely examine a maintenance award "to see whether it is equitable in light of the postdissolution economic situations of the parties." In re Marriage of Sheffer, 60 Wn. App. 51, 56, 802 P.2d 817 (1990). In Sheffer we explained that maintenance is "a flexible tool to more nearly equalize the postdissolution standard of living of the parties, where the marriage is long term and the superior earning capacity of one spouse is one of the few assets of the community." Sheffer, 60 Wn. App. at 57.

An award of maintenance is within the broad discretion of the trial court. In re Marriage of Bulicek, 59 Wn. App. 630, 633, 800 P.2d 394 (1990). An abuse of discretion occurs when the court bases its decision on untenable grounds or reasons. In re Marriage of Foley, 84 Wn. App. 839, 845, 930 P.2d 929 (1997). "An award of maintenance that is not based upon a fair consideration of the statutory factors constitutes an abuse of discretion." In re Marriage of Crosetto, 82 Wn. App. 545, 558, 918 P.2d 954 (1996). "On appeal, [the spouse challenging maintenance] has a difficult burden—to demonstrate that the trial court awarded maintenance based on untenable

grounds or for untenable reasons considering the purposes of the trial court's discretion. Broad discretion is given the trial court." Sheffer, 60 Wn. App. at 56.

Here, the record shows the trial court explicitly considered each of the six statutory factors. It determined that the property distribution and Kaur's existing finances were insufficient to meet her needs; that the parties had a modest standard of living during the marriage; that the marriage was long term (18 years preseparation; 22 years predissolution); that Kaur's age, limited skills, and physical and emotional condition made it unlikely she would find employment adequate to meet her needs; and that Singh could pay maintenance while meeting his own obligations.

Singh argues that when properly considered, these factors weigh against a permanent award of maintenance. But it is the trial court's prerogative and duty to weigh these factors, not ours. In re Marriage of Zahm, 138 Wn.2d 213, 227, 978 P.2d 498 (1999); In re Marriage of Brossman, 32 Wn. App. 851, 854-56, 650 P.2d 246 (1982). Singh challenges only one finding: "Given [Kaur's] limited skills and emotional condition, it is likely that she will [never] be able to acquire sufficient education or training to find appropriate employment." Appellant's Br. at 2. The remaining unchallenged findings are verities on appeal. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 808, 828 P.2d 549 (1992).

On appeal, a trial court's findings of fact will be upheld if supported by substantial evidence. Sunnyside Valley Irrigation Dist. v. Dickie, 149 Wn.2d 873, 879, 73 P.3d 369 (2003). "Substantial evidence is evidence sufficient to persuade a fair-minded person of the truth of the declared premise." In re Marriage of Hall, 103 Wn.2d 236, 246, 692 P.2d 175 (1984). Overwhelming unrebutted evidence and unchallenged findings

support the only challenged finding in this case. Unrebutted evidence shows Kaur's limited work and English language skills. Nonetheless, she looked for work, but several medical conditions and inability to drive limited her options. For example, high blood pressure forced Kaur to quit one job. She also underwent recent surgery to remove a lipoma and two cysts. The court's unchallenged findings indicate, "She was emotionally and physically traumatized and abused by the husband during the 22-year marriage." The evidence shows Kaur's average earnings of approximately $5,025 per year from 2005 to 2010. At the time of trial, she was entirely financially dependent on her daughter. Her monthly expenses exceeded her 2007 income of $11,345 per year. These facts and the court's unchallenged findings quoted above support the trial court's lifetime maintenance award.[9]

Singh claims the trial court "erred when it alluded to [Kaur's] recent surgery and the possibility of trauma as the basis for lifetime maintenance." Appellant's Br. at 16 (boldface omitted). He claims proof of any physical and emotional condition's effect on Kaur's ability to work requires expert testimony. We disagree. He cites no statute or case authority for this argument because none exists. See Beal for Martinez v. City of Seattle, 134 Wn.2d 769, 777 n.2, 954 P.2d 237 (1998) ("The City cites no authority for this proposition and, thus, it is not properly before us.") (citing RAP 10.3(a)(5)); Schmidt

---

[9] Further, the ability of a spouse seeking maintenance to meet his or her needs independently is only one of the factors to be considered under RCW 26.09.090. In re Marriage of Morrow, 53 Wn. App. 579, 585, 770 P.2d 197 (1989). The court here did not award maintenance solely on the basis of Kaur's physical and emotional condition but weighed the other statutory factors, including the length of the marriage, her age, her lack of education and job skills, her limited income while serving as homemaker, and Singh's superior earning capacity.

v. Cornerstone Invs., Inc., 115 Wn.2d 148, 166, 795 P.2d 1143 (1990)); State v. Logan, 102 Wn. App. 907, 911, 10 P.3d 504 (2000) ("'Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none.'") (quoting DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962)). Further, the court's determination properly considered Kaur's "physical and emotional condition" as required by RCW 26.09.090(1)(e).

Singh also contends the trial court abused its discretion in awarding lifetime maintenance because "Permanent lifetime maintenance awards are reserved for spouses who have a permanent debilitating illness and no capacity to earn an income presently or in the future." Appellant's Br. at 13-14. Citing In re Marriage of Mathews, 70 Wn. App. 116, 853 P.2d 462 (1993), he contends, "A lifetime maintenance award can only be approved when it is clear that the party seeking maintenance will not be able to contribute significantly to his or her own livelihood." Appellant's Br. at 7.

Singh mischaracterizes Mathews. Indeed, Mathews supports the trial court's lifetime award in this case. There, Division Three of this court noted, "Our courts have approved awards of lifetime maintenance in a reasonable amount when it is clear the party seeking maintenance will not be able to contribute significantly to his or her own livelihood." Mathews, 70 Wn. App. at 124 (emphasis added). Mathews is also distinguishable. The court there reversed the award of maintenance to the former wife for an indefinite period because, unlike the present case, the trial court's award lacked "fair consideration of [RCW 26.09.090's] statutory factors and therefore constitute[d] an abuse of discretion." Mathews, 70 Wn. App. at 123. "Thus, it appear[ed] Mr. Mathews

-12-

[did] not have the 'ability . . . to meet his needs and financial obligations . . . ', RCW 26.09.090(1)(f), while meeting the obligations imposed by the trial court." Mathews, 70 Wn. App. at 123.[10] As discussed above, the trial court fairly considered all the statutory factors. We are unpersuaded by Singh's remaining claims premised on Mathews.

In In re Marriage of Morrow, 53 Wn. App. 579, 770 P.2d 197 (1989), we upheld a lifetime maintenance award of $2,200 per month because the husband had converted substantial amounts of community property for his separate use and the wife was unable to work due to problems with her vision. Morrow, 53 Wn. App. at 584, 588. We noted the wife's limited ability to earn what he earned and the award properly reflected that she had forfeited economic opportunities during the 23-year marriage while the husband capitalized on them. Morrow, 53 Wn. App. at 587-88. We also determined the husband had the ability to pay the award without sacrificing his own needs, noting that the interest alone on the husband's retained financial resources would yield enough money to pay the maintenance award for life. Morrow, 53 Wn. App. at 587-88.

The record shows Singh brazenly concealed assets and income despite two jail commitments and 17 court orders. He never provided credible testimony to explain the taxi sale proceeds' whereabouts. The record amply demonstrates that Kaur worked in menial jobs, suffered from ill health, lacked transportation and job skills, and was

---

[10] The appellate court concluded, "The trial court's maintenance award and its order that Mr. Mathews pay Mrs. Mathews' medical insurance premiums and education expenses for a period of several years presently leaves him with about $1,000 a month, and Mrs. Mathews with $1,855 per month. His personal property is not significant." Mathews, 70 Wn. App. at 123. In this case, the trial court's unchallenged findings indicate the $1,000 maintenance award is less than 30 percent of Singh's monthly net income and Singh is able to meet his own needs while paying maintenance. Finally, the trial court awarded Singh all of the parties' community property worth $437,000. Mathews bears no similarity to the present case.

primarily a homemaker during this long-term marriage. Kaur's physical and emotional condition suffered at the hands of Singh's long term abuse prevents her from finding work that would allow her to maintain the standard of living Singh enjoys. And the $1,000 maintenance payment—which fails to cover even Kaur's monthly expenses—is only 30 percent of Singh's monthly net income.

The court's decision here is further supported by the markedly unequal property division.[11] In Sheffer, we discussed the factors a trial court should consider in awarding maintenance. Citing our Supreme Court's decision in Washburn, we noted:

> Several more recent cases have also emphasized that the economic condition in which a dissolution decree leaves the parties is a paramount concern in determining issues of property division and maintenance. In In re Marriage of Washburn, 101 Wash.2d 168, 181, 677 P.2d 152 (1984), the court pointed out that consideration of the duration of the marriage and the standard of living during the marriage as mandated by RCW 26.09.090 makes "it clear that maintenance is not just a means of providing bare necessities, but rather a flexible tool by which the parties' standard of living may be equalized for an appropriate period of time." Washburn, 101 Wash.2d at 179, 677 P.2d 152.

Sheffer, 60 Wn. App. at 55 (emphasis added). We emphasized that maintenance may be used "as a flexible tool to more nearly equalize the postdissolution standard of living of the parties, where the marriage is long term and the superior earning capacity of one spouse is one of the few assets of the community." Sheffer, 60 Wn. App. at 57.

"A careful reading of RCW 26.09.090 reveals that the trial court is not only permitted to consider the division of property when determining maintenance, but it is required to do so." In re Marriage of Rink, 18 Wn. App. 549, 552-53, 571 P.2d 210 (1977). Likewise, the trial court, when dividing the property, may take into account the amount of maintenance it intends to grant. RCW 26.09.080. In In re Marriage of Tower,

---

[11] Singh fails to mention the court's unequal division of property in his favor.

55 Wn. App. 697, 780 P.2d 863 (1989), we upheld the amount and permanent duration of a maintenance award in a 19-year marriage where the wife had multiple sclerosis that substantially limited her activities and the husband received 63 percent of the property. Tower, 55 Wn. App. at 701-04. We noted that the disproportionate division of property weighed in favor of awarding long-term maintenance: "[The husband] has 63 percent of the property; [the wife] has only 37 percent. Such a disproportionate community property award in favor of the only spouse with any significant earning capacity would be an abuse of discretion were in not balanced by long term maintenance." Tower, 55 Wn. App. at 701.

As in Tower, the disproportionate property division here supports the lifetime maintenance award. As discussed above, the court awarded Singh the entire $437,000 in community assets, including Singh's taxicab and taxicab licenses—his means of earning substantial income. Kaur received a $109,000 judgment against Singh. Assuming Singh pays the judgment, he still has $328,000 in assets remaining and available to him. This amounts to 75 percent of the property, leaving Kaur with only 25 percent. "[T]he economic condition in which a dissolution decree leaves the parties is a paramount concern in determining issues of property division and maintenance." Washburn, 101 Wn.2d at 181. Like the husband in Tower, Singh undisputedly received most of the parties' community assets and is the only spouse with any significant earning capacity.[12]

---

[12] We decline to address Singh's social security and education claims because he raises them for the first time on appeal. RAP 2.5(a); Roberson v. Perez, 156 Wn.2d 33, 39, 123 P.3d 844 (2005) (An appellate court "'may refuse to review any claim of error which was not raised in the trial court.'") (quoting RAP 2.5(a)). We also decline to

The trial court findings here appropriately considered the parties' disparate economic positions after the dissolution and support its conclusion that permanent maintenance is necessary.[13]

Singh also contends the trial court erred because it "seems to have relied on marital misconduct in its order of maintenance." Appellant's Br. at 18. The record undermines this claim. The trial court properly considered Singh's physical and emotional abuse of Kaur to determine her present employability and prospective earning capacity. A trial court may consider all factors relevant to the parties' economic circumstances in making its disposition of property and maintenance award, including physical abuse as it relates to a spouse's emotional condition and ability to support himself or herself. See In re Marriage of Foran, 67 Wn. App. 242, 258-59, 834 P.2d 1081 (1992) (evidence that husband physically abused wife during marriage was properly admitted for purpose of determining wife's need for maintenance, despite husband's contention that trial court erroneously considered fault in making its maintenance award). We presume the trial judge knows the rules of evidence and considers only the evidence properly before the court and only for proper purposes. In

---

reweigh the evidence regarding lifestyle and disability. It is the trial court's prerogative and duty to weigh the evidence and the statutory factors, not ours. Zahm, 138 Wn.2d at 227; Brossman, 32 Wn. App. at 854-56.

[13] Again, we note the disparity in the property division. Singh received all of the parties' total $437,000 in community assets, and Kaur received a $109,000 judgment against Singh. Even assuming Singh pays the judgment, he is left with $328,000 ($219,000 more than Kaur). Without considering any other factor, this disparity alone would justify over 18 years of maintenance ($219,000 difference paid in monthly installments of $1,000). Further, as discussed above, the maintenance obligation terminates upon Kaur's remarriage.

re Welfare of Harbert, 85 Wn.2d 719, 729, 538 P.2d 1212 (1975). The record plainly shows the court properly considered the undisputed evidence of physical and emotional abuse suffered by Kaur to determine Kaur's need for maintenance under the circumstances here. The trial court acted well within its broad discretion to award lifetime monthly maintenance of $1,000 to Kaur.

Attorney Fees[14]

Kaur requests an award of attorney fees on two theories: RCW 26.09.140 (dissolution – attorney fees) and In re Marriage of Healy, 35 Wn. App. 402, 406, 667 P.2d 114 (1983) (meritless appeal).

We may award attorney fees to either party in a maintenance action. RCW 26.09.140. Determining whether a fee award is appropriate under RCW 26.09.140 requires the court to consider the parties' relative ability to pay and the arguable merits of the issues raised on appeal. Leslie v. Verhey, 90 Wn. App. 796, 807, 954 P.2d 330 (1998). Given the trial court's findings in this case and the parties' financial affidavits submitted on appeal,[15] the trial court is in the best position to

---

[14] Citing RAP 10.4(d), Singh contends that Kaur's brief "improperly includes a motion for attorney fees." Appellant's Reply Br. at 10. Singh misconstrues Kaur's request. Attorney fees must be requested in a brief and are available when they are granted by "applicable law." RAP 18.1(a), (b). Kaur cited applicable law in her request for attorney fees. Singh's argument fails.

[15] Singh filed an "Objection to Respondent's Financial Affidavit and Motion to Strike Respondent's Financial Affidavit as Untimely." To have their financial resources considered, the parties must file financial declarations at least 10 days before oral argument under RAP 18.1(c).

We agree with Singh that Kaur did not strictly comply with RAP 18.1(c)'s time requirement for filing her financial affidavit. But this fact does not defeat her request for an award of attorney fees. RAP 1.2(a) provides:

determine Singh's ability to pay Kaur's appellate fees. We remand to the trial court to determine Kaur's entitlement to and amount of fees requested by Kaur on appeal. See RAP 18.1(i).[16]

## CONCLUSION

For the reasons discussed above, we conclude the trial court properly based its lifetime maintenance award on a fair application of all the statutory factors to substantial evidence presented at trial. We affirm the lifetime maintenance award and the decree of dissolution but remand solely for a determination on Kaur's entitlement to and reasonable amount of attorney fees and costs on appeal.

WE CONCUR:

_____

_Spearman, A.C.J._

_Cox, J._

---

These rules will be liberally interpreted to promote justice and facilitate the decision of cases on the merits. Cases and issues will not be determined on the basis of compliance or noncompliance with these rules except in compelling circumstances where justice demands, subject to the restrictions in rule 18.8(b).

RAP 18.8(a), in turn, provides:

The appellate court may, on its own initiative or on motion of a party, waive or alter the provisions of any of these rules and enlarge or shorten the time within which an act must be done in a particular case in order to serve the ends of justice.

Based on the circumstances here, we waive the timeline and direct the trial court to consider both parties' financial affidavits.

[16] While Singh's arguments are not persuasive, they are not so utterly devoid of merit as to be frivolous.